SO ORDERED.

Dated: September 14, 2017

Daniel P. Collins, Chief Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| In re: | Chapter 11 Proceedings |
|---|---|
| J & M FOOD SERVICES LLC, | Case No. 2:17-bk-01466-DPC |
| Debtor. | |
| CAMEL INVESTMENT L.L.C., | UNDER ADVISEMENT ORDER RE COMMERCIAL REAL PROPERTY LEASE |
| Movant, | |
| v. | |
| J&M FOOD SERVICES LLC, | [NOT FOR PUBLICATION] |
| Respondent. | |

Before the Court is the motion ("2nd Stay Lift Motion") of Camel Investment L.L.C. ("Landlord") for a surrender order and relief from the automatic stay (DE[1] 53). Also before the Court is J&M Food Services, LLC's ("Debtor") motion to assume lease *nunc pro tunc* ("Assumption Motion") (DE 55). After a review of the pleadings filed in this contested matter, and after having taken evidence and having heard oral arguments, the Court now concludes the Debtor's lease with the Landlord was deemed rejected on June 19, 2017. Prior to that date, the Debtor did not file a written motion or make an oral motion to assume the lease. Further, the Landlord did not waive its § 365(d)(4)[2] rights nor has its conduct estopped the Landlord from enforcing those rights. Finally, the Court declines to invoke its § 105 equitable powers to permit a *nunc pro tunc* assumption of the Lease. The Landlord's 2nd Stay Lift Motion is granted. The Debtor's Assumption Motion is denied.

---

[1] DE refers to docket entries in the administrative file concerning this chapter 11 case.

[2] Unless indicated otherwise, statutory citations herein refer to the U.S. Bankruptcy Code ("Code"), 11 U.S.C. `§§ 101-1532, et seq. and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

1

# I. BACKGROUND[3]

1. The Debtor is an Arizona limited liability company initially formed by Jay Ji-Hoon Chung ("Chung") and his then girlfriend, Maggie Liao ("Liao"). Initially, Chung and Liao were the only members of Debtor. In July, 2016, an order of protection was issued in favor of Chung and against Liao after she allegedly chased Chung around the Debtor's restaurant with a knife. *See* August 15, 2017 testimony of Frederick Touton ("Touton"). Liao testified that she is now the sole member of the Debtor.

2. On May 8, 2014, the Debtor and Landlord entered into a written lease ("Lease") (*See* DE 12-1, pp 1-39; Ex[4] 18) calling for the Debtor's occupancy of Landlord's commercial real estate located at 4320 N. Miller Rd. in Scottsdale, Arizona ("Premises"). Chung guaranteed the Lease. *See* Exhibit E attached to the Lease (DE 12-1, pp 37-39). At the Premises, the Debtor currently operates its restaurant business under the name "Sushi J."

3. Approximately 18 months ago, the Landlord approached Chung about relocating Sushi J from the Premises to Landlord's property at 4412 N. Miller Rd. in Scottsdale, Arizona ("Replacement Premises"). The Landlord hired an architect and an interior designer to draw up plans for the Debtor's relocation into the Replacement Premises, which was a former Arby's restaurant location. Liao and Chung were apparently willing to relocate Sushi J to this building. Even if the Debtor was unwilling to do so, ¶ 34.1 of the Lease appears to grant Landlord the unilateral right to force such a move upon the Debtor.

4. On July 8, 2016, the Landlord and D'Lite executed a letter of intent calling for D'Lite to occupy the Premises starting April 1, 2017. Ex. 20. A draft lease between the Landlord and D'Lite was dated January 2017 but was not executed. Ex. 19.

5. Rather than relocate the Debtor to the Replacement Premises, the Landlord entered into a lease for that building with P&J Food Services, LLC ("P&J"), a limited liability company owned by Pajman Mir Malihi ("Page"). Liao claims Chung is a silent partner with Page in this business which now operates a restaurant named "J's Kaiyo Sushi & Bar" in the Replacement

---

[3] This Order sets forth the Court's findings of fact and conclusions of law under Rule 7052 of the Rules of Bankruptcy Procedure.

[4] "Ex" references an Exhibit admitted into evidence at the trial held by this Court on August 15, 2017.

1. Premises. The Premises and Replacement Premises are both at Landlord's Camelback-Miller Plaza and are located about 150 yards from each other.

6. After a dispute arose between Liao and Chung, Liao commenced litigation in the Arizona Superior Court, Maricopa County ("State Court") at CV2017-052353 ("State Court Action"), against Chung, the Landlord, and others, alleging among other things, that money was being directed from the Debtor by Chung and Chung colluded with the Landlord to enable Chung to usurp the Debtor's opportunity to lease the Replacement Premises. James C. Sell ("Sell") was appointed by the State Court as receiver of Debtor. *See* DE 12-1, pp 42-50.

7. On February 17, 2017, the Landlord sent a letter to the Debtor and Liao's attorney declaring a default under the Lease due to the State Court's appointment of a receiver for the Debtor. *See* DE 12-1, pp 40-50. That night, Richard Green ("Green"), his wife Jane Green, and Liao slept in the Premises in hopes of staving off any attempts by the Landlord to shutter the Premises. *See* August 15, 2017 testimony of Green.

8. Fearing a lockout of the Premises by the Landlord, Liao caused the Debtor to file its voluntary chapter 11 bankruptcy petition with this Court on February 18, 2017 ("Petition Date"). The Debtor remains as Debtor-in-Possession in these chapter 11 proceedings.

9. On March 1, 2017, the Landlord filed its motion ("1st Stay Lift Motion") for stay relief (DE 12) claiming the Lease was not property of this bankruptcy estate. The Debtor opposed the 1st Stay Lift Motion (DE 17). The Court denied the 1st Stay Lift Motion after oral argument at a hearing held on April 27, 2017. *See* Minute Entry of April 27, 2017 (DE 43).

10. The date for the Debtor to assume or reject the Lease expired on June 18, 2017. 11 U.S.C. § 365(d)(4). *See also* ¶ 16, p. 7 of Debtor's Assumption Motion and ¶ 20, p. 4 of Debtor's August 8, 2017 Memorandum.

11. On June 23, 2017, the Landlord filed its 2nd Stay Lift Motion (DE 53) claiming the Debtor failed to timely file its motion to assume the Lease and, under § 365(d)(4), the Lease is deemed rejected and the Premises must be surrendered to the Landlord.

12. On June 30, 2017, the Debtor filed its Assumption Motion (DE 55) seeking this Court's *nunc pro tunc* order authorizing Debtor's assumption of the Lease under § 365.

3

13. On July 11, 2017, this Court heard oral argument on the 2nd Stay Lift Motion and the Assumption Motion. At that hearing, the Court determined that an evidentiary hearing was required to resolve these Motions. The Court also strongly encouraged the parties to explore settlement prospects. The Court pointed to the State Court Action, market lease, rates, attorney's compensation, timely rental payments and other elements ripe for discussion. A trial ("Trial") was set for August 15, 2017. *See* the Court's July 11, 2017 Minute Entry (DE 66).

14. Prior to the Trial, the Debtor filed its Memorandum in Advance of Hearing (DE 72), Motion to Strike Camel Investment L.L.C.'s Supplemental Brief re Debtor's Alleged Oral Motion to Assume Lease (DE 75), and Opposition to Camel Investment L.L.C.'s Supplemental Brief re Debtor's Alleged Oral Motion to Assume Lease (DE 76). The Landlord filed its Brief re Debtor's Alleged Oral Motion to Assume Lease (DE 73), Supplemental Brief re Debtor's Alleged Oral Motion to Assume Lease (DE 74), and Response to Debtor's Motion to Strike (DE 77).

15. On July 30, 2017, the Debtor filed a complaint (Ex A) commencing an adversary proceeding against the Landlord, Chung, Page, P&J, and others, seeking among other things, damages for stay violations and fraudulent transfers. *See* adversary proceeding at 2:17-ap-00510-DPC ("Adversary Proceeding").

16. The Trial was held on August 15, 2017, at which time the Court heard sworn testimony of Liao, Green, and Touton. At the Trial, the Court admitted into evidence the Debtor's Exhibits 1, 3 through 8, and 10 through 20, and also the Landlord's Exhibits A through D.

17. At the request of the parties, the Court permitted the filing of closing memoranda. The Debtor filed its Closing Memorandum on August 18, 2017 (DE 83). The Landlord filed its Response to the Debtor's Opposition re Waiver/Estoppel on August 18, 2017 (DE 82). Closing arguments were heard by the Court on August 23, 2017, at which time the Court took this matter under advisement.

## II. ISSUES

Although the Debtor did not timely file a written motion to assume the Lease under § 365(d)(4), did the Debtor timely orally move to assume the Lease? If not, did the Landlord

4

waive the rejection of the Debtor's Lease or is the Landlord estopped from claiming the Lease was rejected?

### III. JURISDICTION

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157(b) and 1334.

### IV. APPLICABLE LAW

Section 365(d)(4) pertains to the trustee's (debtor-in-possession) assumption or rejection of unexpired non-residential real property leases. That section of the Bankruptcy Code states:

> (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of –
> (i) the date that is 120 days after the date of the order for relief; or
> (ii) the date of the entry of an order confirming a plan.
> (B)(i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.
> (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

Bankruptcy Rule 6006(a) applies to the assumption or rejection of leases and notes:

> A proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014.

Bankruptcy Rule 9014(a) applies to contested matters and indicates:

> In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.

A party seeking an order of the Court must comply with Bankruptcy 9013, which states:

> A request for an order, except when an application is authorized by these rules, shall be by written motion, <u>unless made during a hearing</u>. The motion shall state with particularity the grounds therefor, and shall set forth

5

> the relief or order sought. Every written motion other than one which may be considered ex parte, shall be served by the moving party within the time determined under Rule 9006(d). The moving party shall serve the motion on:
> (a) the trustee or debtor in possession and on those entities specified by these rule; or
> (b) the entities the court directs if these rules do not require service or specify the entities to be served. (Emphasis added.)

In summary, an unexpired lease of non-residential property will be deemed rejected unless within 120 days of a voluntary bankruptcy petition the lease (a) is assumed as part of a confirmed plan or (b) a written motion to assume the lease is filed, or (c) an assumption motion is made orally at a court hearing. The Ninth Circuit has held that:

> The term "deemed rejected" has been interpreted to mean that section 365(d)(4) is self-executing. That is, the rejection of a lease occurs automatically *without* the need for court approval. *Id.* at 809. [Footnote omitted.] Once statutory rejection of a lease has occurred, the rejection is conclusive. *In re Sonora Convalescent Hosp. Inc.*, 69 B.R. 134, 137 (Bankr. E.D. Cal. 1986).

*In re Arizona Appetito's Stores, Inc.*, 893 F.2d 216, 219 (9th Cir. 1990).

If a lease is to be assumed by a motion, the Ninth Circuit Court of Appeals has held that the motion "must fit the definition of a motion under the Bankruptcy Rules to satisfy section 365(d)(4)." *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1080 (9th Cir. 1989). The Ninth Circuit's Bankruptcy Appellate Panel ("BAP") had occasion to review § 365(d)(4) and related Bankruptcy Rules. In the case of *In re Treat Fitness Center, Inc.*, 60 B.R. 878 (9th Cir. BAP 1986), the Court held:

> We read 11 U.S.C. § 365 together with Bankruptcy Rule 6006 to require that the debtor or trustee file a formal motion to assume, thus overruling cases under the former Bankruptcy Act that required courts to judge whether words or deeds, often ambiguous at best, constituted an assumption or rejection of a lease or executory contract.

*Id.* at 879.

In 1999, the Ninth Circuit was presented with the opportunity to decide whether principles of waiver or estoppel are avenues available to a court that wishes to avoid the sometimes harsh consequences of lease rejection under § 365(d)(4). In declining to decide these questions, the

Court held:

> Section 365 was substantially amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333. Since these amendments, this court has not addressed the issue of whether the equitable doctrines of waiver and estoppel are available to prevent lease forfeitures under Section 365(d)(4).
>
> . . .
>
> We need not reach, however, the general question of whether a lessor's post-rejection conduct can waive the automatic rejection under Section 365(d)(4), because it does not affect the outcome in this case. Even assuming arguendo that waiver is possible under Section 365(d)(4), we find that the [landlord] did not waive its rights to enforce the rejection against the [debtors].
>
> To find that the [landlord] waives its rights under Section 365(d)(4), we would need to find "(1) the existence at the time of the waiver of a right, privilege, advantage or benefit; (2) the actual or constructive notice thereof; and (3) the intention to relinquish such right, privilege, advantage or benefit." *In re VMS Nat'l Properties*, 148 B.R. at 944. *See also In re THW Enters., Inc.*, 89 B.R. 351, 356 (Bankr. S.D.N.Y. 1988) (defining a waiver as "an intentional relinquishment of a known right.").
>
> . . .
>
> Next, the [debtors] argue that the [landlord] should be equitably estopped from asserting its rights under the code. Again, we need not decide whether the equitable doctrine of estoppel is available under Section 365(d)(4), because there are no grounds for estoppel in this case. The bankruptcy court made express findings of fact that "[t]here was no inequitable activity on the part of the [landlord] in the handling of this matter."

*In re George*, 177 F.3d 885, 889-90 (9th Cir. 1999).

## V. <u>ANALYSIS</u>

Having discussed the legal landscape, this Court will address arguments raised by the parties and discuss the evidence adduced at Trial. In summary, the Debtor argues (1) the record reflects an implied or *de facto* or oral motion to assume the Lease, (2) this Court should exercise its § 105 powers to permit the entry of a *nunc pro tunc* order authorizing the Debtor's assumption of the Lease, (3) the Landlord waived its right to enforce the § 365(d)(4)'s automatic

7

rejection of the Lease, and (4) the Landlord is estopped from asserting the rejection of the Lease.

### A. Implicit, *De Facto* or Oral Motion to Assume.

The parties before the Court all agree the Debtor did not timely file a written motion to assume the Lease nor was a chapter 11 plan filed prior to 120 days from the Petition Date. However, the Debtor contends the actions of the Debtor and the Landlord cumulatively constitute a timely implicit or *de facto* or oral motion to assume the Lease within the meaning of Bankruptcy Rule 9013. The Debtor points to the following in support of this contention:

1. The Debtor vigorously opposed the Landlord's 1st Stay Lift Motion because, without its access to the Premises through the Lease, the Debtor's contemplated chapter 11 plan would be crippled. DE 72, p 6. In other words, no Lease, no business. DE 55, p 11.

2. The Debtor's Pre-Confirmation Report (DE 18, p 6) noted the Debtor intended to file a plan of reorganization "that will enable it to continue operating the restaurant post-confirmation."

3. The Pre-Confirmation Report suggested the possibility of retaining a reputation manager to help regain the restaurant's online presence.

4. The Debtor's counsel's February 27, 2017 letter to the Landlord's counsel (Ex 3) noted the Lease was property of the Debtor's bankruptcy estate and referenced the Debtor's intentions concerning the Lease.

5. The Debtor objected to the liquor license application of P&J, another sushi restaurant slated to occupy the Replacement Premises, because the Debtor feared the damage competition would cause to the Debtor's business location. Ex. 8.

6. Post-petition, the Debtor paid the 2016 common area maintenance ("CAM") charges[5] assessed by the Landlord and the Debtor also arguably paid the Landlord for the January 2017 rent. The Debtor also claims it was current on post-petition payments due under the Lease

---

[5] The Court finds that, although the 2016 CAM charges were invoiced to the Debtor post-petition, those Landlord claims constitute a pre-petition "claim" within the meaning of § 101(5). *See Ames Dept. Stores, Inc.*, 136 B.R. 353, 356 (Bankr. S.D.N.Y. 1992).

8

1 and that the Landlord not only accepted such payments but also demanded these sums post-petition.

7. The Debtor's principal, Liao, has advanced $20,000 post-petition to keep the Debtor's restaurant operating at the Premises.

8. The Debtor's lawsuit, filed pre-bankruptcy against the Landlord and others, sought damages arising out of the Landlord allowing the Replacement Premises to be occupied by a competing business, which business appears to be connected to Chung.

9. The Debtor filed its Adversary Proceeding as further evidence of its intent to run its sushi business in either the Premises or the Replacement Premises.

10. Post-petition emails and other communications between the Landlord and the Debtor's representatives concerning rent, grease trap repairs, the Replacement Premises, etc. reflect the Debtor's intent to remain in the Premises and that the Landlord knew or should have realized this fact.

11. The Debtor incurred and paid for several post-petition repair bills at the Premises. Ex. 15.

The Landlord contends it did not know the Debtor intended to assume the Lease nor did the Debtor intend to assume the Lease because the Debtor had been trying to relocate into the Replacement Premises. This Court finds that, since the Landlord wants the Debtor to relocate and has a tenant ready to take over the Premises, it is not inconsistent for the Debtor to simultaneously desire to assume the Lease and relocate into the Replacement Premises.

This Court further finds that the Debtor's filings with this Court and oral presentations before this Court were consistent with the Debtor's intent to assume the Lease, and that the Debtor's desire was known (or should have been understood) by the Landlord. Nevertheless, the Debtor's intentions and the Landlord's understandings do not constitute an oral motion to assume the Lease prior to the June 18, 2017 deadline imposed by § 365(d)(4). At no point in any proceeding before this Court did the Debtor state anything along the lines of "the Debtor hereby requests that the Court enter its order allowing the Debtor to assume the Lease." Rule 9013

9

requires that even an oral motion state with particularity the grounds for the motion and the relief sought. That did not occur at any point in the record before this Court. Additionally, Rule 9014 affords the moving party opposition the right to reasonable notice and an opportunity for hearing. That also did not happen here.

As to the possibility that the Debtor's actions constituted an implicit or *de facto* motion to assume the Lease, this Court agrees with *Treat Fitness*[6] and the BAP's interpretation of § 365(d)(4) and Bankruptcy Rule 6006. Specifically, the Court finds that § 365(d)(4) and Bankruptcy Rule 6006 together overrule Bankruptcy Act cases which required a bankruptcy court to determine whether certain actions and/or inaction "constituted an assumption or rejection of a lease or executory contract." *Treat Fitness*, 60 B.R. at 879. Even though this Court finds the Debtor intended to assume the Lease and the Landlord knew or should have known this fact, this Court reads *Treat Fitness* to provide a bright line test for this Court: If neither a timely written or oral motion or a filed plan seek assumption of an unexpired lease, that lease is deemed rejected once the 120-day period expires. This Court does not have the freedom to rescue a debtor that has all the right intentions if the debtor's actions do not culminate in a timely filed plan, a written motion, or a proper oral motion timely made in open court.

B. § 105 Equitable Powers.

Next, the Debtor argues that § 105 provides the statutory power for this Court to recognize the Lease was assumed by the Debtor because the Debtor manifested its intent to assume the Lease and the Landlord acted in a manner demonstrating it understood the Lease was to be assumed. Alternatively, the Debtor asks that § 105 be used to grant the Assumption Motion *nunc pro tunc*. § 105 states:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or

---

[6] In this Court's July 15, 2013 order in the case of *In re Sample*, 2:10-bk-38373-DPC, the Court held that "so long as there is not a contrary published opinion from the District Court of Arizona, this Court will follow the opinions of the Ninth Circuit BAP, whether or not this Court agrees with the reasoning behind the particular BAP decision." This Court continues to hold true to this commitment.

10

> making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The Debtor notes that the Ninth Circuit has affirmed a bankruptcy court's order which retroactively ordered the rejection of an unexpired lease under § 365(d). *See In re At Home Corp.*, 392 F.3d 1064, 1067 (9th Cir. 2004). It does not follow, however, that this Court is free to enter a *nunc pro tunc* order allowing the assumption of a lease where the statute deems the lease rejected when the lease is not timely assumed.

The Debtor relies heavily on *In re Sportsman's Link, Inc.,* No. 07-10454, 2007 WL 7023835 (Bankr. S.D. Ga. Oct. 31, 2007) for the proposition that a bankruptcy court should look to the totality of the circumstances to determine if a debtor's actions were tantamount to an assumption of a lease under § 365(d)(4). That case is, of course, not binding on this Court. Moreover, the *Sportsman's Link* decision is at odds with the Ninth Circuit BAP's decision in *Treat Fitness*.

The U.S. Supreme Court has cautioned bankruptcy courts against using equitable powers conferred by § 105 where specific statutes run contrary to or in conflict with the proposed exercise of § 105 powers. *Law v. Siegel*, 571 U.S. ——, 134 S.Ct. 1188, 1194 (2014). The Ninth Circuit has also held that § 105 cannot properly be invoked to save a debtor who failed to timely assume an executory contract or unexpired lease under § 365. Section 105 "does not empower courts to issue orders that defeat rather than carry out explicit provisions of the Bankruptcy Code such as section 365(d)(4)." *Sea Harvest Corp.*, 868 F.2d at 1080. This Court will not call upon its § 105 powers to enter an order it finds contrary to the mandate of the Code.

C. <u>Mistake and Excusable Neglect</u>.

The Debtor's Assumption Motion and subsequent filings discuss at length the tragic April 14, 2017 death of the Debtor's counsel's law partner which, in turn, led to chaos in counsel's law office. Although the Debtor does not cite Bankruptcy Rule 9024 or Rule 60 of the Federal Rules of Civil Procedure (which is incorporated into Rule 9024), counsel essentially invokes the essence of those rules in an effort to avoid the consequences of § 365(d)(4) due to mistake and excusable neglect attributable to counsel's personal and professional turmoil.

The Court has found no Ninth Circuit case which has addressed the issue of whether Rule 9024 or Rule 60 can be applied to allow an extension of time to the 120-day deadline set forth in § 365(d)(4). However, this issue has been explored by Bankruptcy Judge Krechevsky in the case of *In re Damach, Inc.*, 235 B.R. 727 (Bankr. D. Conn. 1999) where the court held:

> Neither of these rules [9006(b), 9024 or Rule 60 F.R.C.P.], however, permits a court to extend a time limitation set by Congress in a statute; they permit modification only of time limitations imposed by other rules or by the court. *See, e.g., In re Federated Food Courts, Inc.*, 222 B.R. 396, 397 (Bankr. N.D. Ga. 1988) (". . . Bankruptcy Rule 9006(b) does not give the court the authority to enlarge the deadline in § 365(d)(4).").
>
> . . .
>
> The court finds that the automatic termination of leases under § 365(d)(4) is a substantive, rather than procedural, matter, and that it may not, therefore, be modified or extended by either the Federal Rules of Bankruptcy Procedure or the Federal Rules of Civil Procedure.
>
> . . .
>
> The court concludes that the rules do not give it the authority to apply the "excusable neglect" exception to extend the statutory deadline under § 365(d)(4) for automatic rejection of an unexpired lease of nonresidential real property. Because the excusable neglect exception is not available, the court need not consider whether the reason for the late filing satisfies the criteria for excusable neglect set forth in *Pioneer*[7] . . . .

*Id*. at 731-72.

In a more recent case, the Ninth Circuit determined that the bankruptcy court did not have the power to extend statutory timelines, even where excusable neglect existed. *Anwar v. Johnson*, 720 F.3d 1183, 1187-88 (9th Cir. 2013). Although *Anwar* addressed non-dischargeability complaint timing, it is similar to the instant case because an enlargement of the time for taking action outside of the explicit statutory time mandate was not permitted. Because the automatic rejection of leases under § 365(d)(4) is substantive, rather than procedural, this Court does not have the authority or equitable powers to modify or increase the time periods prescribed in the statute.

Invoking Rule 9024 and Rule 60 in the Debtor's case is unavailing.

---

[7] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380 (1993).

D. <u>Waiver and Estoppel Cannot Overcome § 365(d)(4)</u>.

Unlike the Ninth Circuit in the *George* decision, this Court will address the viability of theories of waiver and estoppel as applied to lease rejection under § 365(d)(4). This Court is persuaded by Judge Pagter's opinion in the case of *In re Chandel Enterprises, Inc.*, 64 B.R. 607 (Bankr. C.D. Ca. 1986) where the Court held that:

> Although the language of section 365(d)(3) might allow for a waiver, this interpretation defeats the purpose of and the result required by section 365(d)(4). Applying the anti-waiver provision to acceptance of any post-petition rent does not contradict the express language of section 365(d).
>
> As for estoppel, the court in *Haute Cuisine*, [57 B.R. 200 (Bankr. M.D. Fla. 1986)], was faced with a particularly egregious factual situation. In the instant case, even viewing the facts in a light most favorable to defendant, this court would not hold that CPI is estopped. More importantly, *Lovitt* [*v. Appleatchee Riders Ass'n (In re Lovitt),* 757 F.2d 1035 (9th Cir. 1985)], and *Treat Fitness, supra,* appear to preclude the use of either waiver or estoppel concerning section 365(d)(4). Failure to properly assume the lease within the sixty-day period results in an automatic rejection of the lease and extinguishes any and all interest of the debtor in the leasehold. Subsequent to the automatic rejection, this court has no jurisdiction to resurrect in favor of the debtor, a property right that no longer exists. Furthermore, since the *Treat Fitness* decision prohibits assumption by any method other than a timely formal motion, it necessarily precludes using waiver or estoppel to accomplish the same result. If either waiver or estoppel were applicable, the Congressional intent in enacting the 1984 amendments, eliminating uncertainty regarding the status of nonresidential leases and requiring the debtor-in-possession to take affirmative action to assume the lease, *In re Las Margaritas*, [54 B.R. 98 (Bankr. D. Nev. 1985)], 54 B.R. at 100, would be circumvented. This court is unwilling to ignore the clear purpose of the 1984 amendments.

*Id*. at 610.

This Court agrees with *Chandel Enterprises*. A Lease that is deemed rejected cannot be revived by a landlord's subsequent action or inaction.

Notwithstanding this Court's legal conclusion that waiver and estoppel are not capable of undercutting what this Court finds to be the clear mandate of § 365(d)(4) and *Treat Fitness*, this Court is mindful that an appellate court might conclude, like the court in *VMS National*

13

*Properties*, 148 B.R. 942 (Bankr. C.D. Ca. 1992),[8] that "waiver and estoppel are available to defeat rejection by operation of § 365(d)(4)." *In re Sjoquist*, 484 B.R. 207, 217 (Bankr. C.D. Ca. 2012). For this reason, the Court will now review these doctrines in view of the case at bar.

E. <u>Waiver</u>.

Although the Ninth Circuit has declined to indicate whether a § 365(d)(4) lease rejection can be waived by a landlord, it did note that, to determine whether a waiver has occurred,

> we would need to find "(1) the existence at the time of the waiver of a right, privilege, advantage or benefit; (2) the actual or constructive notice thereof; and (3) the intention to relinquish such right, privilege, advantage or benefit." *In re VMS Nat'l Properties*, 148 B.R. at 944. *See also In re THW Enters., Inc.*, 89 B.R. 351, 356 (Bankr. S.D.N.Y. 1988) (defining a waiver as "an intentional relinquishment of a known right").

*George*, 177 F.3d at 889.

In the case before this Court, there is no serious debate about the existence of waiver elements (1) and (2). The Landlord had the right, under § 365(d)(4), to entry of an order of this Court declaring the Lease was rejected on June 19, 2017 and the Landlord was fully aware of this right when it filed its 2nd Stay Lift Motion four days later. If the Landlord's § 365(d)(4) rights can be waived, the only question is whether the Landlord intended to relinquish those rights.

This Court finds the Landlord did not intend to relinquish its § 365(d)(4) Lease rejection rights. The Landlord's 2nd Stay Lift Motion was filed on June 23, 2017, four days after the Lease was deemed rejected. The Landlord wanted to be paid for the Debtor's use of the Premises before and after the Lease was rejected but accepting several monthly payments was not a waiver of the Lease rejection, even if those payments were on account of amounts owed at the Petition Date. It is worth recalling that § 365(d)(3) states "[a]cceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or this title." The Landlord wants the Debtor out of the Premises. It contends the Lease is at a below market rate

---

[8] In the *VMS* case, the court was faced with the prospect of the landlord obtaining a $5,960,000 windfall if the lease was forfeited. That fact appears to influence the court's ruling. The Debtor before this Court will undoubtedly also feel that the Landlord will receive a windfall by this Court's decision. However, this Court believes *VMS* is at odds with § 365(d)(4) and *Treat Fitness* on the question of the availability of waiver and estoppel where a lease has been deemed rejected. The Court is certainly sympathetic to the Debtor's plight but is constrained by the language of the statutes and the BAP's opinion.

14

and it has a national tenant ready, willing, and able to occupy the Premises at a higher lease rate. Significantly, the Debtor had sued the Landlord in the State Court Action and later filed the Adversary Proceeding against the Landlord. It is no surprise the Landlord wants the Debtor out of the Premises. The Landlord no doubt hopes that, once the Debtor is removed from the Premises, the Debtor will not have the means to continue asserting claims against the Landlord.[9]

F. <u>Estoppel</u>.

The Debtor argues the Landlord must be estopped from asserting the applicability of § 365(d)(4). In *George*, the Ninth Circuit recognized that a finding of inequitable conduct is necessary to estop a landlord from asserting its § 365(d)(4) rights. Like the bankruptcy court in the *George* case, this Court declines to find the Landlord acted inequitably after the Petition Date in connection with its relationship and dealing with the Debtor and its representatives. This is not to say, however, that the Landlord is blameless in connection with its pre-petition dealings involving the Replacement Premises, the current Replacement Premises tenant and parties related to that tenant, or the prospective tenant which the Landlord hopes to place into the Premises. Those are all issues for another day in either the Adversary Proceeding or the State Court Action.

## **CONCLUSION**

Based on the foregoing, this Court hereby denies the Debtor's Assumption Motion and grants the Landlord's 2nd Stay Lift Motion. The Landlord is directed to lodge a brief form of order consistent with this Under Advisement Order.

**DATED AND SIGNED ABOVE.**

---

[9] A significant portion of the evidence produced at the Trial pertained to the question of whether the Debtor post-petition had paid all pre and post-petition amounts due under the Lease. Ex 17 indicates there was no balance owed on the Lease as of July 31, 2017. However, Touton claimed that invoice was incorrect. This Court finds Touton's testimony unhelpful in this regard as he was quite confused on matters pertaining to the Debtor's payments on the Lease. More importantly, this Court's decision is not based on whether or not the Debtor was current on the Lease. Even if it was not current at the time of the Trial, the Court finds the Debtor could and would promptly cure any payment defaults. The crux of the Court's decision is that the Lease was not timely assumed. As much as it would like to, this Court cannot change the legal consequence of that oversight.

15

| | |
|---|---|
| 1 | **To be Noticed through the BNC to:** |
| 2 | |
| 3 | Jonathan P. Ibsen |
| | Canterbury Law Group, LLP |
| 4 | 14300 N. Northsight Blvd., Suite 129 |
| | Scottsdale, AZ 85260 |
| 5 | |
| 6 | James M. LaGanke |
| | James M. LaGanke, P.L.L.C. |
| 7 | 13236 N. 7th St., Suite 4-257 |
| | Phoenix, AZ 85022-5343 |
| 8 | |
| 9 | Teresa H. Foster |
| | Brier, Irish, Hubbard & Erhart, P.L.C. |
| 10 | 2400 E. Arizona Biltmore Cir., Suite 1300 |
| | Phoenix, AZ 85016 |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |